IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

BLUEFIELD GAS COMPANY,

      Plaintiff,

v.                                    CIVIL ACTION NO. 1:09-1497

ABBS VALLEY PIPELINE, LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's motion to compel arbitration, or in the alternative, to dismiss the case for failure to state a claim.  (See Doc. Nos. 6 & 7).  For the reasons enumerated below, the court **DENIES** Defendant's motion to compel arbitration.   The court **GRANTS** Defendant's motion to dismiss Plaintiff's claims 4 & 5, but **DENIES** Defendant's motion to dismiss Plaintiff's claims 1 through 3.

## I.  Factual and Procedural Background

This case involves a dispute arising out of a gas supply agreement that Plaintiff and Defendant entered into on October 27, 1997.  See Exhibit 1 to Complaint, p. 2.  Plaintiff filed the instant case on December 16, 2009, invoking the court's diversity jurisdiction, and alleging breach of contract by Defendant. Specifically, Plaintiff avers that Defendant breached its obligation (a) to recalculate the reservation fee that Plaintiff had to pay Defendant once Defendant had recouped its investment

1

costs and (b) to refund the difference between the cost of
Plaintiff's actual and projected usage volumes, based on a
"shrinkage charge."  See Complaint, p. 4.  Plaintiff argues that
because of Defendant's two breaches, Defendant has retained more
money than it was entitled to.  Plaintiff's complaint seeks
declaratory relief and damages for both breach of contract and
unjust enrichment.  See Complaint pp. 5-8.

Defendant filed this motion requesting the court to compel
arbitration or, in the alternative, dismiss Plaintiff's suit for
failure to state a claim on January 8, 2010.  In seeking to
compel arbitration, Defendant relies on the Federal Arbitration
Act, 9 U.S.C. §§ 1 et seq.  Defendant argues that Section 10 of
the gas supply agreement relates specifically to the question of
reservation fees and usage charges - the two issues in contention
in this case.[1]  See Memorandum of Law in Support of Defendant's
Motion to Compel Arbitration, p. 6.  Defendant points to the
arbitration provision in that section and urges the court to
compel arbitration of the instant dispute based on that
provision.  See id at 9.  Defendant maintains that the parties

---

[1] Section 10 of the agreement provides: "The start date of
this Agreement shall be no later than December 31, 1998.  The
term of the agreement will be for 15 years with a reopener every
5 years, to redetermine, if necessary, the applicable reservation
fee and gas supply pricing to be paid.  These fees will be
subject to redetermination via binding arbitration in the event
the parties cannot agree on price, as per guidelines described in
letter dated October 16, 1997 from Joseph C. Vanzant, Jr. in
reference to reservation changes."  See Exhibit 1 to Complaint.

intended the reopeners in Section 10 to be the mechanism for recalculating the reservation fee and for refunding the cost of any usage difference.  <u>See</u> <u>Defendant's Reply to Plaintiff's</u> <u>Memorandum in Opposition, pp. 1-2</u>.  Therefore, concludes Defendant, since Section 10 contains an arbitration provision for disputes related to the recalculation of reservation fees and shrinkage charges, the court should compel arbitration in the instant case.

Plaintiff counters that Section 10 of the supply agreement is a reopener provision, which gives the parties the flexibility to renegotiate various terms of their agreement every five years. <u>See</u> <u>Plaintiff's Memorandum of Law in Opposition to Defendant's</u> <u>Motion to Compel Arbitration, pp. 1-2</u>.  Plaintiff maintains that the reopener provision is wholly separate from Defendant's obligation (a) to reduce the reservation fee after Defendant has recouped its investment in the project and (b) to refund the difference between Plaintiff's projected and actual gas usage. <u>See</u> <u>id.</u>  In support of its argument, Plaintiff points out that Defendant's obligations come from different parts of the gas supply agreement, not Section 10.[2]  <u>See</u> <u>id. at 2-4</u>.  Plaintiff

_____

[2] Defendant's promise to recalculate the reservation fee appears in Section 2 of the agreement: "[t]he fee will be redetermined after initial investment and financing charges are recovered (to be determined based on actual pipeline costs and interest rates), based on operating expenses and a reasonable ROE utilizing FERC guidelines for regulated pipelines."  <u>See</u> <u>Exhibit</u> <u>1 to Complaint, p.1</u>.  Defendant's promise to compensate Plaintiff

3

urges the court to construe the arbitration provision narrowly, as applying only to situations where the parties reach an impasse over reservation fees and usage adjustments during the course of reopener negotiations.  See id at 5.

## II. Analysis

Section 4 of the Federal Arbitration Act allows a party to petition a federal district court to enforce an arbitration provision of a written agreement that is the subject of dispute. See 9 U.S.C. § 4.  Specifically, the moving party must demonstrate: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Adkins et al. v. Labor Ready, Inc. et al., 303 F.3d 496, 500-01 (4th Cir. 2002).

In considering the arbitrability of the parties' dispute, the court must first determine whether Defendant has met the four elements required to compel arbitration.  The court finds that Defendant has satisfied three of the four elements, while a more

---

appears in a June 18, 1999 letter from Defendant's predecessor corporation, T&F Operating, Inc.  The letter states in pertinent part: "If the actualized % shrinkage is less than the applicable shrinkage factor for any twelve-(12) month period, then Bluefield Gas will receive a credit.  Bluefield will not be billed for any excess, if the actualized % shrinkage is greater than the applicable shrinkage factor." See Exhibit 4 to Complaint, p.1.

4

searching inquiry is required to determine whether the agreement's arbitration provision "purports to cover the dispute."  First, there is clearly a dispute between the parties. Second, the transaction in question here (the sale of gas) implicates interstate commerce.  See Defendant's Motion to Compel Arbitration, p.2.  Third, Plaintiff has refused to arbitrate the dispute, arguing that it is beyond the scope of Section 10's arbitration provision.  See Plaintiff's Memorandum in Opposition, pp. 1-2.  Accordingly, the court's chief task is to determine whether the parties intended Section 10 to govern the recalculation of reservation fees and the reimbursement of excess usage charges and whether, therefore, the agreement requires arbitration of this dispute.

"When deciding whether the parties agreed to arbitrate a certain matter, courts generally [...] should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  If, however, there is doubt or ambiguity "concerning the scope of arbitrable issues," the doubt or ambiguity "should be resolved in favor of arbitration."  Id.; Elox Corp. v. Colt Indus., Inc., 1991 U.S. App. LEXIS 29323, at * 10 (4th Cir. Dec. 16, 1991) (citing Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

In determining whether the parties to a contract intended for a particular issue to be arbitrated, the reviewing court must balance the federal policy of favoring arbitration with the parties' own expressed intent.  Zandford v. Prudential-Bache Sec., Inc., 112 F.3d 723, 726 (4th Cir. 1997).  On the one hand, as the Fourth Circuit stated, "Motions to compel arbitration under an arbitration clause should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.'"  Id. (citing United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).  On the other hand, however, "[a]rbitration clauses are contractual terms, and ordinary means of contract interpretation must be applied to determine their applicability to particular disputes.  Arbitration may only be judicially compelled when the parties have agreed to it, and then only for those kinds of disputes that the parties have agreed to submit to arbitration."  Id.  Courts must be particularly vigilant where an arbitration provision is narrow and does not purport to encompass all possible disputes arising out of a contract.  New River Mgmt. Co., L.L.C. v. Henry Schein, Inc., 9 Fed. Appx. 232, 235 (4th Cir. 2001).  In such cases, it is appropriate to consider the "tone of the clause as a whole."

6

McDonnell Douglas Fin. Corp., et al. v. Pennsylvania Power and
Light Co., 858 F.2d 825, 832 (2d Cir. 1988).

Neither party disputes that Virginia law governs the gas
supply agreement.  Consequently, the court must interpret the
agreement using Virginia rules governing contractual
interpretation.  Virginia law requires that a court interpreting
a written contract give effect to the intent of the parties.
Flippo, et al. v. CSC Assoc. III, L.L.C., 547 S.E.2d 216, 226
(2001).  In so doing, a court should consider "the document as a
whole."  Pocahontas Mining, L.L.C. v. CNX Gas Co., L.L.C. et al.,
666 S.E.2d 527, 531 (2008).  If possible, however, "meaning must
be given to every clause." Brumskill v. Brumskill, No. 1759-02-
2, 2003 Va. App. LEXIS 527, at *9 (Va. Ct. App. Oct. 21, 2003).

*A. The Promise to Recalculate the Reservation Fee*

Defendant's promise to recalculate the reservation fee
appears in Section 2 of the gas supply agreement.  Section 2
neither requires Plaintiff to initiate the change, nor places the
obligation explicitly on Defendant to unilaterally change the fee
once Defendant has recouped its investment costs. Furthermore,
the contract leaves open the amount by which the fee should be
changed.  The only indication of the new reservation fee comes
from a letter Defendant's predecessor company, Phoenix Energy
Sales Company, wrote Plaintiff.  See Exhibit 2 to Complaint.  In
the letter, Defendant states that it would eventually be willing

to accept a reservation rate below $2.00, a discount from the $3.50 reservation rate in effect at the time of the letter.  <u>See id.</u>  The letter leaves open the precise amount, however. Additionally, there is no indication of when the reservation fee recalculation should take place.  Once again, the Phoenix letter gives an estimate of 46-58 months as the time frame for which the then-existing reservation fee would be in effect.  <u>See id.</u>  The letter implies that after that time period, a change in the fee amount would be possible.

In light of this uncertainty, Defendant urges that Section 10 provides the proper mechanism for recalculation of the reservation fee, and that the redetermination should be made during one of the reopeners.  Plaintiff, however, asks the court to read the language of Section 2 as placing an independent obligation on Defendant to affirmatively and unilaterally lower the reservation fee once it has recouped its investment costs. In Plaintiff's view, this obligation is wholly separate from the reopeners that Section 10 allows.

The court finds Plaintiff's argument more persuasive.  The parties unequivocally separated the obligation to recalculate the reservation fee after Defendant had recouped its investment costs from the reopener clause.  This strongly suggests that both parties intended for the recalculation after investment recovery to be an <u>independent obligation</u> that had nothing to do with the

8

reopeners.  Had the parties intended for the reopeners to be the
governing mechanism for recalculating the reservation fee, they
could have very easily said so.  The fact that they did not
suggests that this obligation was completely separate from the
option, every five years, to renegotiate various terms of the
agreement.  While both Section 2 and Section 10 discuss
"reservation fees" this is about as far as their commonality
goes.  Although the parties failed to specify how and precisely
when the reservation fee would be recalculated, the court will
not interpret this lack of specificity in the agreement to
discharge Defendant of its obligation to recalculate the
reservation fee once it had recouped its investment costs.

Accordingly, the recalculation of the reservation fee
following Defendant's recoupment of its investment costs does not
come under the purview of Section 10's reopeners, the dispute is
not covered by Section 10's narrow arbitration clause.

B. *The Promise to Refund the Usage Difference*

Defendant promised to refund the difference between
Plaintiff's projected gas usage and its actual gas usage in a
letter to Plaintiff from Defendant's predecessor company, T&F
Operating, Inc.  See Exhibit 4 to Complaint.  In its motion to
compel arbitration, Defendant maintains that Plaintiff should
also be required to arbitrate this claim.  Plaintiff counters
that this claim – even more so than the dispute related to

9

reservation fees - falls outside Section 10, and therefore does not need to be arbitrated.

The court once again agrees with Plaintiff because this obligation is also independent from the option to renegotiate various terms of the agreement during reopeners.  The obligation to refund comes from an entirely separate part of the contract (from a letter, to be precise) and therefore does not even touch the reopener clause.  Additionally, the fact that the time and method of the refund is much more specifically spelled-out makes it even less likely that the parties intended for Section 10 to govern the refunds.  First, the method for determining the amount of the refund is clearly stated: volume readings from a gathering meter will be compared to the volume readings from an electric meter and the difference refunded.  See Exhibit 4 to Complaint, p.1.  Second, the timing of the refund is much more clear.  The letter states that the refund is to be determined following each twelve month period.  See id. at 1.  As such, there is little reason to think that the parties intended for Section 10 and the reopener to be the governing mechanism for the refund.

Because the court finds that the refund obligation is outside the purview of Section 10, the court also finds that this dispute is not subject to Section 10's arbitration provision.

*C. Defendant's Motion to Dismiss for Failure to State a Claim*

As part of its motion to compel arbitration, Defendant also moved the court to, in the alternative, dismiss Plaintiff's claims for failure to state a claim for which relief can be granted under Federal Rules of Civil Procedure 12(b)(6). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); <u>Acorn Land, LLC v. Baltimore Cnty., Maryland</u>, 2010 U.S. App. LEXIS 19582, at *17–18 (2010). Under <u>Iqbal</u>'s exacting standards, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." <u>Iqbal</u>, 129 S. Ct. at 1949.

*1. Claims 1 through 3 for Breach of Contract*

The court has found that the Defendant's obligations (a) to recalculate the reservation fee and (b) to refund the usage difference are independent obligations from the option to renegotiate contractual terms under the reopeners of Section 10. Since Defendant did not recalculate the reservation fee, and since Defendant has not made all refunds for usage difference, the court finds that Plaintiff has stated a claim for breach of contract that is plausible on its face.

*2. Claims 4 & 5 for Unjust Enrichment*

Defendant argues that "[u]nder Virginia law, "[u]njust enrichment claims arise from the recognized Virginia principle that 'one person may not enrich himself unjustly at the expense of another.' Thus, unjust enrichment claims lie in equity and stem from an implied contract or an otherwise unenforceable contract. However, where there is a legally enforceable, valid and express contract between the parties, the 'law will not imply a contract in contravention thereof.'" <u>Arias et al. v. Jokers Wild, Inc. et al.</u>, 73 Va. Cir. 281, 301 (Va. Cir. Ct. 2007); <u>see also Lemon, et al. v. Hufford, et al.</u>, 2009 Va. Cir. LEXIS 95, 4. Neither party disputes that the gas supply agreement is enforceable. As such, a valid and binding agreement exists between the parties. Consequently, Defendant maintains that Plaintiff's unjust enrichment claim should be dismissed, because Plaintiff's only remedy is for breach of contract, a remedy at law. Beyond alleging that Defendant is mistaken in its argument, Plaintiff offers no substantiated rebuttal.

Instead, Plaintiff contends that Virginia law also allows unjust enrichment as a remedy where, as in this case, Plaintiff mistakenly made payments to Defendant that were greater than what the contract required Plaintiff to pay. <u>See Memorandum in Opposition to Motion to Compel, p. 9</u>. Plaintiff's theory, underdeveloped at best, appears to be that it erroneously

12

overpaid with regard to the reservation fee and the usage charge - not realizing its mistake until much later.[3]

While Plaintiff's alternate theory for allowing a claim of unjust enrichment might be sound, Plaintiff's pleading of its mistaken overpayment to Defendant is inadequate to survive a motion to dismiss.  Plaintiff does not set forth any facts, tender any explanations, or give any account whatsoever of the circumstances of its mistake.  Instead, Plaintiff merely alleges that it was mistaken, which, without more, appears to be an unsupported conclusion.  As the U.S. Supreme Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Although for the purposes of a motion to dismiss courts must take all of the factual allegations in the complaint as true, they are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-50.  Without more detail, there is no way for the court to determine whether Plaintiff's claim for unjust enrichment based on mistake is even plausible.

Plaintiff's failure to set forth specific facts is not only problematic from Iqbal's standpoint, but also falls short of the requirements of Federal Rules of Civil Procedure 9(b), which requires greater particularity in pleading "special matters."

---

[3] Plaintiff first brought this theory to the court's attention in its Complaint. See Complaint, pp. 7-8.

Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Plaintiff has failed to do this.

Because Plaintiff fails to set forth specific facts explaining the circumstances of its mistake with regard to overpayment, the court **GRANTS** Defendant's motion to dismiss for failure to state a claim with respect to Plaintiff's claims 4 & 5.

### III. Conclusion

For the above-stated reasons, the court **DENIES** Defendant's motion to compel arbitration.  The court **GRANTS** Defendant's motion to dismiss Plaintiff's claims 4 & 5, but **DENIES** Defendant's motion to dismiss Plaintiff's claims 1 through 3.

The Clerk of Court is requested to forward a copy of this Memorandum Opinion and Order to all counsel of record.

It is **SO ORDERED** this 15th day of November, 2010.

ENTER:

David A. Faber
Senior United States District Judge

14